UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CYNTHIA WHITMORE,

    Plaintiff,

v.                                                   Case No. 8:22-cv-641-MAP

COMMISSIONER OF SOCIAL SECURITY

    Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits (DIB).[1]  Plaintiff argues that the Administrative Law Judge (ALJ) committed reversible error by (1) failing to assess the opinion evidence of two consultative examining medical practitioners who Plaintiff treated with after the administrative hearing, and (2) finding that Plaintiff could perform her past work as a night auditor since that job constituted a composite job, thereby requiring consideration of whether Plaintiff could perform all aspects of the job.  As the ALJ's decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed and remanded.

    I.     *Background*

Plaintiff, who was born in 1965, claimed disability beginning January 30, 2018

---

[1] The parties have consented to my jurisdiction.  *See* 28 U.S.C. § 636(c).

(Tr. 392-97). She was 52 years old on the alleged onset date. Plaintiff completed high school and attended college for two years, and her past relevant work experience included work as a front desk clerk/hotel clerk, a night auditor, and a general clerk secretary (Tr. 36-37, 415-17). Plaintiff alleged disability due to a spinal disorder, a torn rotator cuff and torn ligament in the left arm, bursitis in the right hip, arthritis in the right knee, bipolar disorder, anxiety disorder, migraine headaches, and fibromyalgia (Tr. 415).

Given her alleged disability, Plaintiff filed an application for DIB (Tr. 392-97). The Social Security Administration (SSA) denied Plaintiff's claims both initially and upon reconsideration (Tr. 108-29, 229-43). Plaintiff then requested an administrative hearing (Tr. 244-45). Per Plaintiff's request, the ALJ held an initial telephonic hearing at which Plaintiff appeared and testified and a supplemental telephonic hearing at which the ALJ solicited testimony from a vocational expert (VE) (Tr. 33-42, 43-69). Following the second hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 12-32).

In rendering the administrative decision, the ALJ concluded that Plaintiff last met the insured status requirements on December 31, 2018, and had not engaged in substantial gainful activity during the period from her alleged onset date of January 30, 2018, through her date last insured of December 31, 2018 (Tr. 17). After conducting the hearings and reviewing the evidence of record, the ALJ determined that, through the date last insured, Plaintiff had the following severe impairments: spine disorders and dysfunction of major joints (Tr. 17). Notwithstanding the noted

impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18). The ALJ then concluded that, through the date last insured, Plaintiff retained a residual functional capacity (RFC) to perform sedentary work, except that Plaintiff could lift and carry 10 pounds occasionally and 10 pounds frequently;[2] could sit for six hours in an eight-hour workday; could stand and/or walk for two hours with a sit/stand option (without being off-task when changing positions); could climb ramps and stairs occasionally; could never climb ladders, ropes, or scaffolds; could stoop, kneel, crouch, and crawl occasionally; could never work at unprotected heights and never with moving mechanical parts; needed to avoid concentrated exposure to extreme cold and working with or near vibration; and needed to avoid hazards in the workplace, such as heights and moving or heavy machinery (Tr. 19). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 20).

---

[2] Given the redundancy by the ALJ, it is unclear whether the ALJ meant to limit lifting and carrying to occasionally or frequently. As the lifting and carrying limitations do not affect the outcome, the error is harmless.

Considering Plaintiff's noted impairments and the assessment of a VE, the ALJ determined that, through the date last insured, Plaintiff could perform her past relevant work as a night auditor, as that work did not require the performance of work-related activities precluded by Plaintiff's RFC (Tr. 25). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled at any time from January 30, 2018, the alleged onset date, through December 31, 2018, the date last insured (Tr. 26). Given the ALJ's finding, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-11, 390-91). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. § 405(g).

II.   *Standard of Review*

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an "impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an

individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

    III.    Discussion

        A.    *Post-Hearing Consultative Examiners' Medical Opinions*

Plaintiff argues that the ALJ erred by failing to assess the opinion evidence from the two consultative examining physicians who examined Plaintiff after the initial administrative hearing. Under the applicable regulations, an ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative finding, including from a claimant's medical source. 20 C.F.R. § 404.1520c(a). Rather, in assessing a medical opinion, an ALJ considers a variety of factors, including but not limited to whether an opinion is well-supported, whether an opinion is consistent with the record, the treatment relationship between the medical source and the claimant, and the area of the medical source's

6

specialization. 20 C.F.R. § 404.1520c(c)(1)-(4). The primary factors an ALJ will consider when evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 404.1520c(a) & (b)(2). Specifically, the more a medical source presents objective medical evidence and supporting explanations to support the opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(1). Further, the more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(2). And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source. *See* 20 C.F.R. § 404.1520c(b)(1). Beyond supportability and consistency, an ALJ may also consider the medical source's specialization and the relationship the medical source maintains with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the medical source examined the claimant, in addition to other factors. 20 C.F.R. § 404.1520c(c)(3)(i)-(v), (4), & (5). While the ALJ must explain how he or she considered the supportability and consistency factors, the

ALJ need not explain how he or she considered the other factors.[3] 20 C.F.R. §§ 404.1520c(b)(2).

Here, at the close of the first administrative hearing in April 2021, the ALJ indicated that she was going to send Plaintiff to undergo two consultative examinations, one for mental impairments and the other for physical impairments (Tr. 66-67). The ALJ then informed Plaintiff and Plaintiff's counsel that she would probably conduct a supplemental hearing after receiving the reports from the consultative examiners and get VE testimony at that time because she did not feel comfortable doing it on the record before her (Tr. 67). According to the ALJ, she believed that the consultative examinations would "help [her] a little bit, to just put all the other things in together" (Tr. 67). The ALJ then reiterated that the evaluations would help Plaintiff (Tr. 67).

Plaintiff attended the consultative examinations in May 2021, with Sally A. Stader, Ph.D., assessing and offering a medical opinion as to Plaintiff's mental limitations (Tr. 1192-98) and Adejuyigbe Adaralegbe, M.D., assessing and offering a medical opinion as to Plaintiff's physical limitations (Tr. 1200-04). Subsequently, during the supplemental administrative hearing in September 2021, the ALJ reiterated that she was holding the supplemental administrative hearing because the consultative examinations had occurred, and she wanted to get all the VE testimony at one time

---

[3] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. § 404.1520c(b)(3).

rather than piecemeal (Tr. 36). Despite specifically ordering the mental and physical consultative examinations, however, the ALJ omitted any reference to either consultative examiner's medical opinion, much less addressed the persuasiveness of each, in the administrative decision (Tr. 15-26). Such omission warrants remand.

Indeed, the Commissioner does not contest the fact that the ALJ failed to include an analysis of Dr. Stader's opinion and Dr. Adaralegbe's opinion. Rather, the Commissioner posits that, even assuming that the ALJ erred by not evaluating the opinions, such error was harmless for several reasons, including that the opinions post-dated the date last insured, the opinions both lack consistency and supportability in the record, and the opinions fail to identify limitations during the relevant time period based on the lack of a response from either doctor to a question on a form asking about what date the limitations were found to first be present (Doc. 19). Plaintiff succinctly summarizes the error in the Commissioner's position, stating:

> Defendant argues that the ALJ's failure to discuss the persuasiveness of the two consultative examiner's opinions that the ALJ sent [Plaintiff] to after the hearing was harmless error[] because the examinations took place after the date last insured. It has to be remembered that the ALJ sent [Plaintiff] to these examinations after the hearing, which was after the date last insured. Surely the ALJ knew that the evidence would be from a time period after the date last insured, and still felt it would have some probative value, otherwise, why would she waste everyone's time and the program's limited resources with procuring irrelevant evidence? To then not even state how she found the evidence, was improper.

(Doc. 21, at 2). Further, the Commissioner's attempts to provide a post hac rationale for the ALJ's decision, where the ALJ remained notably silent, cannot provide a basis for affirming the ALJ's decision. *See Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729,

733 (11th Cir. 2011) ("The Commissioner argues that Dr. Janush's opinion was rendered two years after Dempsey's last insured date and there is no specific medical evidence that Dempsey had mental limitations during the period she was insured. However, the ALJ did not offer this explanation in his decision. We cannot affirm based on a post hoc rationale that 'might have supported the ALJ's conclusion.'") (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)). Upon remand, therefore, the ALJ shall address the persuasiveness of both Dr. Stader's and Dr. Adaralegbe's medical opinions in accordance with 20 C.F.R. § 404.1520c. If the ALJ requires clarification as to whether the opinion assesses only Plaintiff's current limitations at the time of the examination or whether the opinion relates back to the period at issue, she shall contact Dr. Stader and/or Dr. Adaralegbe to obtain such information.

### B.   Composite Job

Plaintiff's second point of contention pertains to whether her past relevant work as a night auditor constituted a composite job. "A composite job is one that has 'significant elements of two or more occupations and, as such, [has] no counterpart in the DOT.'" *Smith v. Comm'r of Soc. Sec.*, 743 F. App'x 951, 954 (11th Cir. 2018) (quoting Social Security Ruling (SSR) 82-61, 1982 WL 31387, at *2 (Jan. 1, 1982)) (alteration in original). The SSA's Program Operations Manual System (POMS)[4] discusses an

---

[4] *See* secure.ssa.gov/apps10/ (last visited March 21, 2023).

ALJ's consideration of past relevant work, referenced as PRW, in determining whether such work constitutes a composite job, as follows:

> Composite jobs have significant elements of two or more occupations and as such, have no counterpart in the DOT.
>
> • The claimant's PRW may be a composite job if it takes multiple DOT occupations to locate the main duties of the PRW as described by the claimant.
>
> • If you determine that PRW was a composite job, you must explain why.
>
> • When comparing the claimant's RFC to a composite job as the claimant performed it, find the claimant capable of performing the composite job only if he or she can perform all parts of the job.
>
> • A composite job does not have a DOT counterpart, so do not evaluate it at the part of step 4 considering work "as generally performed in the national economy."
>
> • At step 5 of sequential evaluation, a claimant may be able to use skills he or she gained from a skilled or semiskilled composite job to adjust to other work.

POMS DI 25005.020(B). Accordingly, "[w]hen the claimant's previous work qualifies as a composite job, the ALJ must consider the particular facts of the individual case to consider whether the claimant can perform his previous work as actually performed." *Smith*, 743 F. App'x at 954 (citing SSR 82-61, 1982 WL 31387, at *2). SSR 82-61 makes plain, however, that "some individual jobs may require somewhat more or less exertion than the DOT description" and that a claimant's former job "may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy." 1982 WL 31387, at *2. Notably, "if the claimant cannot perform the excessive functional

11

demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" *Id.*

During the initial administrative hearing, Plaintiff described her past work at the Wyndham Hotel as a "night inventory" position that involved a desk job doing the books at the end of the night part of the time and taking things to each customer's room and back (Tr. 50). At the supplemental administrative hearing, the ALJ and Plaintiff's counsel questioned the VE about Plaintiff's past relevant work, including whether her position as a night auditor constituted a composite job (Tr. 35-41). In response to a question posed by Plaintiff's counsel asking whether the night auditor job was part of a composite job with the front desk clerk job, the VE testified:

> Generally, I'm not sure that I would call it a composite job. The night auditor also has to do the check-ins. There's normally not two people overnight at the hotel doing that. The night auditor almost always exclusively does the check-ins over the third shift.
>
> ***
>
> And, there's a certain amount of time at night, for example, at 3:30 they have to shut the system down, do the calculations for the day, and get it started up for the next day of work, and that's what the auditor is doing. Even during that period of time, they can't be checking people in or out. So, I'm not sure I would call it a composite job. I think the desk work – or the hotel desk work is combined with that night auditor.

(Tr. 39-40). On remand, to the extent that the ALJ requires clarity as to whether Plaintiff's past work as a night auditor constitutes a composite job and, if so, what effect that has on Plaintiff's ability to perform her past work as a night auditor, the ALJ shall elicit the testimony of a VE.

12

*IV.    Conclusion*

For the foregoing reasons, the ALJ failed to apply the correct legal standards, and the ALJ's decision is not supported by substantial evidence. Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is REVERSED and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings consistent with this Order.

2. The Clerk is directed to enter final judgment in favor of Plaintiff and close the case.

DONE AND ORDERED in Tampa, Florida, on this 21st day of March, 2023.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

cc:    Counsel of Record